CHANG LIM,

    Plaintiff,

v.

ALEX M. AZAR, II,

    Defendant.

Civil Action No. TDC-17-0438

## MEMORANDUM OPINION

    Plaintiff Dr. Chang Lim, a former Commissioner's Fellow with the United States Food and Drug Administration ("FDA"), has filed this action against the Secretary of Health and Human Services ("HHS"), in which he has alleged that he was subjected to unlawful retaliation for filing discrimination complaints with the FDA and the United States Equal Employment Opportunity Commission ("EEOC"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (2018). Pending before the Court is HHS's Motion for Summary Judgment and Lim's Cross Motion for Summary Judgment. The Motions are fully briefed, and the Court held a hearing on the Motions on February 20, 2020. For the reasons set forth below, HHS's Motion will be GRANTED IN PART and DENIED IN PART, and Lim's Motion will be DENIED.

## BACKGROUND

    Relevant background is set forth in this Court's memorandum opinion on HHS's Motion to Dismiss, in which the Court dismissed the race discrimination claims asserted in the Second Amended Complaint but declined to dismiss the retaliation claims. *Lim v. Azar*, 310 F. Supp. 3d

588, 594-97 (D. Md. 2018). The Court sets forth below the facts relevant to the resolution of the pending Motions.

## I.    FDA Employment

In 2008, Lim was appointed to a two-year position as a Commissioner's Fellow at the FDA. The appointment was subject to an initial one-year trial period. As part of the appointment process, Lim signed a "Recruitment/Relocation Incentive Service Agreement" ("the Incentive Agreement'), which entitled him to a lump sum bonus payment of $7,500. Joint Record ("J.R.") 79-80, ECF No. 115. However, the Incentive Agreement, which was a standard agreement for Commissioner's Fellows, also provided that "payment of this incentive is associated with [the Fellow's] performance and/or conduct." J.R. 79. It further stated that if the Fellow "voluntarily fail[s] to complete the period of service . . . or [is] separated for cause," the Fellow is "entitled only to those incentive payments already paid by the agency that are attributable to the completed portion of the service period." J.R. 80. Further, if the Fellow "received incentive payments in excess of the amount attributable to the completed portion of the service period," the Fellow would be obligated to repay the excess amount. *Id.* The excess amount would "be a debt due to the United States" that the Fellow agreed to repay in full. *Id.* However, the Incentive Agreement provided that the FDA Commissioner "may approve a request for a waiver" if the Fellow's failure to complete the full term was "due to circumstances which are beyond [the Fellow's] control." *Id.* Lim signed this Incentive Agreement and received the $7,500 bonus payment.

Once Lim began his term as a Fellow, his relationship with the FDA and his colleagues quickly soured. Lim claims that the project on which he had been appointed to work was not available once his term began, and that his colleagues prevented him from effectively conducting the work expected of a Fellow. His supervisor, Dr. Jonathan Sackner-Bernstein, expressed concern

that Lim's work was inadequate and that Lim "does not understand scientific methods nor possess the interpersonal skills to work effectively/productively in a large or intense organizational structure," concluding that Lim "is unlikely to make great progress as a member of the Agency." Apr. 1, 2009 Email at 2-3, Compl. Ex. 4, ECF No. 46-4. Lim was also involved in at least two email disputes with another Fellow, which led to an FDA official sending Lim a memorandum regarding acceptable office interactions on March 5, 2009. Lim responded with a memorandum of his own, leveling a variety of accusations at other Fellows and the Fellowship Program. Eventually, on June 5, 2009, Lim was summoned to a meeting with multiple FDA officials, including Kimberly Holden, Assistant Commissioner for Management (Operations), who presented him with a termination memorandum she had authored and gave him the choice to voluntarily resign or have his employment terminated. Lim declined to resign and was fired.

## II.     Post-Termination Activity

### A.     Unemployment Insurance Benefits Application

After his termination, Lim sought unemployment benefits through the Maryland Department of Labor, Licensing, and Regulation ("DLLR"). However, after reviewing the circumstances of Lim's departure from the FDA, DLLR denied benefits on July 23, 2009 on the grounds that Lim "voluntarily quit employment with FDA on 06/05/2009 in anticipation of discharge" at a time when "the employer had not made a decision to discharge" him. J.R. 88. To explain how DLLR reached this conclusion, Lim has produced a document he asserts was provided to him by DLLR that includes an "Employer Fact Finding Statement," apparently provided by an FDA Human Resources Specialist named "Keith," which asserts that Lim "voluntary quit in anticipation of discharge" and that Lim "was not nor would have been discharged." J.R. 134. The statement further claimed that as of June 5, 2009, "no decision had been made to discharge him"

3

and that "[i]t was something that could have happened, but did not at the time. Continuing work was available." J.R. 134. HHS objects to the consideration of this document on the grounds that it has not been authenticated and contains hearsay.

On July 29, 2009, Lim appealed the denial of benefits. At a September 8, 2009 hearing before a DLLR Hearing Examiner, both Lim and FDA officials testified that Lim did not voluntarily resign and was instead terminated. On September 25, 2009, the DLLR Hearing Examiner reversed the denial of benefits, finding that Lim had been terminated. The Hearing Examiner further concluded that Lim was not otherwise disqualified from receiving benefits because he had not been "discharged . . . for gross misconduct or misconduct connected with the work" within the meaning of the relevant Maryland law. J.R. 92. According to Lim, although he began receiving unemployment benefits, he did not receive benefits for the time period from the DLLR's initial denial of benefits until the DLLR Hearing Examiner's reversal of that denial.

## B.    Overpayment and Leave Payout

Although Lim was terminated on June 5, 2009, the FDA continued to pay him for the next two pay periods, covering the time period from June 6, 2009 to July 4, 2009. On June 26, 2009, the FDA deposited $3,140.95 into Lim's Bank of America account, and then on July 10, 2009, it deposited $3,140.96 into that account. Together, Lim was overpaid $6,281.91.

On May 7, 2010, the FDA listed the overpayment as a debt Lim was required to return. [J.R. 159] However, it did not seek to recoup this entire amount. It instead opted to decrease the requested repayment by the amount that, under agency policy, Lim was entitled to be paid out for his unused annual leave and credit hours. At the time of his termination, Lim had accrued 16 hours of annual leave and 24 credit hours. At Lim's hourly rate of $54.15, these 40 hours entitled him to $2,166, which after deductions as calculated by the FDA, resulted in a net payout of $1,334.26.

The FDA consequently decreased the amount it sought for the salary overpayment by this amount, demanding only $4,947.65 from Lim and thereby effectively cancelling out the debt it owed to him for the leave payout. Although Lim made at least one substantial payment of $5,235.79, and the Internal Revenue Service ("IRS") seized his tax refunds for 2010 and 2011 in part to offset this debt, on July 26, 2012, he was notified that his debt—now calculated at $235.18 in unpaid principal and $30.10 in unpaid interest—had been referred to the United States Department of the Treasury ("Treasury"). Then, on October 9, 2012, Lim was informed that an outstanding debt of $272.14 had been referred to Performant Recovery, Inc., a private collection firm. Some time later, Lim received a letter from Pioneer Credit Recovery, Inc. attempting to collect a debt of $372.56.

### C.  Relocation Bonus Recoupment

After Lim was terminated, the FDA also sought to recoup a portion of the $7,500 bonus payment that Lim received as part of the Incentive Agreement. Because Lim had already worked for several months at the time of his termination, the FDA sought only a prorated portion of the bonus, demanding in an August 25, 2009 letter that Lim pay back $5,208.90. Although Lim requested a waiver of this recoupment, it was denied by Kimberly Holden, the FDA Assistant Commissioner for Management who authored Lim's termination letter and was present at the June 5, 2009 meeting when Lim was terminated. On February 28, 2011, Lim paid off the $5,208.90 in full.

However, the previous year, on May 7, 2010, the FDA had created another debt in Lim's name for $5,208.90. Lim's tax refunds for 2010 and 2011 were seized in part to offset this debt. On April 20, 2011, Lim sent an email, copying Holden, to William Darracott, the Chief of the Debt Servicing Section within HHS and the official who forwarded Lim's debts from HHS to Treasury for collection, in which he requested confirmation that the debt associated with the bonus

recoupment had been fully paid. On April 21, 2011, Darracott denied the request by email, also copying Holden, in which he acknowledged that the February 28, 2011 payment had satisfied the bonus recoupment, but referenced the outstanding second bonus recoupment debt, which with interest had increased to $5,717.95.

After making some payments on this debt, Lim was notified on July 26, 2012 that this debt—now calculated at $4,859.28, including unpaid principal and interest—had been referred to Treasury for collection. On October 9, 2012, Lim was notified that this debt, which with interest had increased to $4,998.36, had been referred to by Treasury to Performant Recovery, Inc. for debt collection.

During the present litigation, defense counsel sent Lim a letter explaining that during the course of this case, HHS discovered that it "may have inadvertently collected, attempted to collect, or referred to the Department of Treasury for collection $5,208.90 more than the amount [Lim] actually owed." J.R. 125. Consequently, it sent Lim a check for $5,208.90 "without any condition, regard, or intended effect on the outcome" of this case. *Id.*

## III.    Equal Employment Activity

During the June 5, 2009 meeting at which Lim declined to resign and was fired, he was asked to sign a termination memorandum authored by Holden, but he refused. Instead, he wrote on the memorandum, "David Lim is refusing to sign, and David Lim will be filing a lawsuit to reinstate and with the following causes of action (1) discrimination based on national origin (2) retaliation (3) negligence, etc." Termination Mem. at 3, ECF No. 46-6. Holden was present and, according to Lim, was "uncontrollably yelling at me." J.R. 29.

On June 11, 2009, Lim initiated contact with the FDA Office of Equal Employment Opportunity and Diversity Management (the "EEO Office") regarding his termination, and he filed

a formal complaint with the EEO Office on September 16, 2009. On April 29, 2013, HHS issued a final order rejecting Lim's complaint. Lim appealed this decision to the EEOC, which affirmed the HHS decision on August 6, 2015.

Separately, on September 27, 2010, during the processing of his first EEO complaint, Lim filed a second formal complaint with the EEO Office alleging post-termination retaliation. Specifically, Lim alleged that on August 2, 2010, the Chief of the HHS Debt Services Section referred Lim to a debt collection agency, which resulted in Lim receiving a collection letter in retaliation for his prior complaints. The EEO Office dismissed the complaint pursuant to 29 C.F.R. § 1614.107(a)(3) on the grounds that these claims were not accepted for consideration in the proceedings on the first complaint.

On July 7, 2011, Lim filed a third formal complaint with the EEO Office, alleging that he was retaliated against for his prior complaints when he was reported to the IRS and a debt collection agency. This complaint was dismissed on October 4, 2011 for failing to state a claim that affected the terms, conditions, or privileges of Lim's employment.

## DISCUSSION

In its Motion, HHS seeks summary judgment on the grounds that based on the record evidence, there are no genuine issues of material fact and it is entitled to judgment as a matter of law on Lim's retaliation claims. In his Cross Motion, Lim argues that HHS cannot show legitimate, non-retaliatory reasons for its actions, such that he is entitled to summary judgment on his retaliation claims.

## I. Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court must believe the evidence of the non-moving party, view the facts in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## II.    Retaliation

A Title VII retaliation claim follows a burden-shifting framework analogous to the discrimination framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> [A] plaintiff bears the initial burden of establishing a prima facie case of retaliation. Once this burden is carried, the burden shifts to the defendant, who is obliged to articulate a legitimate, non-retaliatory justification for the adverse employment action. If the defendant carries this burden, the onus is on the plaintiff to then demonstrate that the non-retaliatory reason advanced by the defendant is a mere pretext.

*EEOC. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005) (internal citations omitted); *cf. McDonnell Douglas*, 411 U.S. at 802-05.

To establish a *prima facie* case of retaliation, a plaintiff must present facts that establish that (1) the plaintiff engaged in a protected activity; (2) the employer took a materially adverse action against the plaintiff; and (3) "there was a causal link between the two events." *Boyer-*

*Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (citation omitted). "Protected activity" consists of "oppos[ing] any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3. Employment practices made unlawful by Title VII are those that discriminate against employees on the basis of race, color, religion, sex, or national origin. *See id.* § 2000e-2 (delineating unlawful employment practices under Title VII). Thus, as HHS does not dispute, Lim's complaints of discrimination, including his filings and other interactions with the EEO Office, constituted protected activity. The crux of the parties' disagreement regarding the *prima facie* case, then, pertains to the second and third *McDonnell Douglas* factors.

For a defendant's action to satisfy the second factor and constitute a materially adverse action, it must be of such a nature that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). To satisfy the third factor, the plaintiff, while not required to establish that the protected activities were a but-for cause of the adverse action, must make "some showing" of causation, such as demonstrating that the "employer either understood or should have understood the employee to be engaged in protected activity" and that "the employer took adverse action against the employee soon after becoming aware of such activity." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 214 (4th Cir. 2019). "[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to show a legitimate, non-retaliatory reason for the adverse action. *See Navy Fed. Credit Union*, 424 F.3d at 405. The defendant's burden, however, "is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The defendant can meet it by

"offering admissible evidence sufficient for the trier of fact to conclude" that the proffered legitimate, non-retaliatory reason was the actual reason for the adverse action. *Id.* If the defendant makes such a showing, the burden then shifts back to the plaintiff to show that the stated reason was pretextual and that retaliation was the "actual reason" for the materially adverse action. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253-54 (4th Cir. 2015).

Lim alleged a variety of materially adverse actions that he claims were retaliatory. HHS, for its part, contests some of these actions on the ground that they never occurred and others on the ground that they were taken for legitimate, non-retaliatory reasons. The Court addresses these actions individually.

### A.    Communications with DLLR

In his Second Amended Complaint, Lim asserts that the FDA "falsely reported Lim's termination to the State of Maryland as voluntary, intending to prevent him from getting unemployment benefits," in retaliation for his protected activity. Second Am. Compl. ¶ 61, ECF No. 68-1. Providing false information to cause DLLR to deny Lim unemployment benefits would constitute a materially adverse action, as it would "dissuade a reasonable worker" from participating in protected activity. *Burlington N.*, 548 U.S. at 57. In *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079 (10th Cir. 2007), for example, the court found that falsely claiming that an employee was fired for sexual harassment in an apparent attempt to disqualify the employee from receiving unemployment benefits was a materially adverse action. *Id.* at 1090; *cf. Aviles v. Cornell Forge Co.*, 183 F.3d 598, 605-06 (7th Cir. 1999) (holding that an employer's filing of a false police report was an "adverse employment action" for purposes of a Title VII retaliation claim).

HHS does not contest this legal conclusion. Instead, it asserts that the FDA never took this action. It argues that although the first DLLR decision on Lim's claim denied it on the grounds that Lim voluntarily quit, it was Lim, not FDA officials, who reported that Lim voluntarily resigned. Specifically, it points to the fact that the DLLR Hearing Examiner stated to Lim during the appeal hearing that "you told the claims specialists you quit because you thought you were going to be discharged," an assertion which Lim denied. J.R. 97. But a question by a hearing examiner that assumed that Lim told claims specialists that he had quit is not evidence where Lim denied it and no claims specialist testified to that fact. More persuasively, HHS highlights the fact that during the DLLR appeal hearing, FDA officials specifically testified that Lim had been terminated and had not resigned.

Lim, for his part, has presented evidence in the form of a DLLR "Employee Fact Finding Statement" reflecting that an FDA Human Resources Specialist named "Keith" told DLLR that Lim had voluntarily resigned. J.R. 134. HHS objects to the consideration of this document on the grounds that it has not been authenticated and that it contains hearsay. Under such an objection, "the movant has the burden to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538-39 (4th Cir. 2015) (quoting Fed. R. Civ. P. 56 advisory committee's note).

Here, Lim asserted at the hearing on the Motions that he received the Employee Fact Finding Statement from DLLR, and that fact is supported by markings on the face of the document, such as a listed internet address, reflecting that it is a DLLR record. Moreover, the document, which includes information purportedly from FDA describing to the circumstances of Lim's departure, appears to be a record of regularly conducted activity: Maryland law requires employers to submit "separation notices" if requested by the Secretary of Labor, Licensing, and Regulation,

11

Md. Code Ann., Lab. & Empl. § 8-627(a) (LexisNexis 2016), and Maryland regulations require both that the Secretary make such a request whenever a claimant files a claim for unemployment insurance and that the employer provide the "[r]eason for the claimant's separation from employment," Md. Code Regs. 09.32.02.05(B) (2017). Thus, the document likely could be authenticated by a DLLR official as a public record or a record of regularly conducted activity. *See* Fed. R. Evid. 803(6), (8).

Further, although HHS argues that the statements by "Keith" are hearsay where Keith does not work for DLLR, those statements likely would not be offered for the truth of the matter asserted, since Lim disputes that he resigned, but would instead be offered to show that the statements were made by the FDA. *See* Fed. R. Evid. 801(c)(2). Even if they were offered for the truth, there is a reasonable basis to infer that DLLR relies on such reports from an employer on the circumstances of an employee's departure because the information is strikingly similar to the facts actually included in the DLLR's notice of denial of benefits relating to Lim. Both documents state that Lim "voluntarily quit," that he did so "in anticipation of discharge," and that the FDA had not "made a decision to discharge" Lim at the time that he quit. *Compare* J.R. 88 *with* J.R. 134. A statement within a business or public record may be admissible even if made by an individual outside the organization if it is the type of statement relied upon by the organization in its activities. *See, e.g.*, *Smith v. SEECO, Inc.*, 922 F.3d 406, 412-13 (8th Cir. 2019) (holding that it was not an abuse of discretion to admit a document containing statements from another entity "so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied" (citation omitted)). Where it is apparent that DLLR relies on statements from employers such as those offered by the FDA official in making its benefits determinations, it is fair to anticipate that this document could be rendered admissible as a business or public record of

DLLR including information from employers typically relied upon by DLLR. Under these circumstances, and particularly where Lim is self-represented, the Court will consider the Employee Fact Finding Statement in evaluating the Motions. *See Humphreys & Partners Architects*, 790 F.3d at 538-39.

Consequently, there is a genuine issue of material fact as to whether the FDA actually reported to DLLR that Lim resigned, causing the denial of benefits. Although HHS argues that there is no evidence that "Keith" was an FDA Human Resources Specialist or was aware of Lim's protected activity, HHS acknowledges that it has not located Keith and has no evidence that he was not an FDA Human Resources Specialist. More importantly, where Holden had a managerial role over Human Resources at FDA, including having exercised her authority to terminate Lim and to decide whether to waive his bonus recoupment, it is reasonable to infer that her staff was acting at her direction in responding to the DLLR. She was specifically aware of Lim's protected activity because she was present on June 5, 2009 when he informed her that he would be suing FDA for discrimination. Viewing the facts in the light most favorable to Lim, the Court finds that on the present record, there is a genuine issue of material fact on whether FDA told DLLR that Lim resigned in order to prevent him from receiving unemployment benefits. The Court will therefore deny summary judgment to both HHS and Lim on this claim.

### B. Accrued Leave

Lim also claims that the FDA retaliated against him by taking the materially adverse action of failing "to fully, timely compensate Lim's accrued and unused annual leave and credit hours." Cross Mot. Summ. J. at 2, ECF No. 108. If established, the withholding of compensation to which Lim was entitled would constitute a materially adverse action. *See Burlington N.*, 548 U.S. at 72-

73 (holding that even a temporary suspension of pay is a materially adverse action under Title VII).

HHS concedes that Lim "was entitled to be paid for his accrued and unused annual leave and credit hours" when his employment was terminated. Mot. Summ. J. at 11; *see also* J.R. 253 ("[A]n employee will receive a lump-sum payment for any unused annual leave when he or she separates from Federal service."). When he was terminated, Lim had accrued 40 hours of such leave. At his hourly rate of $54.15, the amount to which Lim was entitled upon termination was $2,166, less standard payroll deductions.

HHS does not claim that the FDA issued a payment to Lim in this amount. Rather, it claims that the FDA deducted this amount, less the payroll deductions as calculated by FDA, from a separate debt that Lim owed. After terminating Lim's employment, the FDA had inadvertently continued to pay Lim for two additional pay periods, even though—as Lim acknowledged in his deposition—he did no work for the FDA during these periods. In total, Lim was overpaid $6,281.91. Rather than seek that entire amount from Lim, the FDA sought the difference between that figure and the amount that it owed Lim for his unused leave. Thus, while the FDA never separately paid Lim what he was owed for his accrued leave, it did not withhold this amount from Lim. *See Madison v. Virginia*, 474 F.3d 118, 126 (4th Cir. 2006) (noting that "money is fungible"). Accordingly, no reasonable jury could find that the FDA took a materially adverse action regarding Lim's leave payout. The Court therefore grants summary judgment to HHS on the claim of retaliation arising from the failure compensate Lim for accrued leave and denies summary judgment to Lim on this issue.

## C.    Salary Overpayment

As another example of a retaliatory action, Lim claims that the FDA improperly sought to collect from Lim an amount above what he actually owed for his salary overpayment. Such unjustified collection activities would qualify as an adverse action. *Cf. Burlington N.*, 548 U.S. at 72-73 (holding that even a temporary suspension of pay is a sufficiently adverse action under Title VII). HHS, however, disputes whether this miscalculation actually occurred.

As discussed above, the FDA overpaid Lim $6,281.91 for the two pay periods after his employment was terminated, and because the FDA owed Lim at least $1,334.26 for his accrued leave, it deducted that amount from the $6,281.91 and thus determined that Lim owed only $4,947.65.  Then, on April 27, 2011, Lim paid $5,235.79.  However, because the FDA was charging interest of approximately 10.875 percent yearly, that payment was no longer enough to pay off the debt fully, which had increased to approximately $5,431.17.  Lim asserts that he then paid another $288.14 to pay off the debt, but that the FDA continued to treat the debt as unpaid. However, Lim fails to provide any evidence of this $288.14 payment.  The document that he cites for his claim, a computer printout, does not reflect this additional payment.  Notably, his affidavit refers to the $5,235.79 payment, but not to the $288.14 payment.  In the absence of evidence that Lim fully paid off his debt, the evidence is insufficient to establish that a reasonable jury could find that the FDA's continued efforts to recoup the money constituted a retaliatory action against Lim by "creating additional false debt."  Cross Mot. Summ. J. at 6.

In so finding, the Court recognizes that Lim has a legitimate basis to be frustrated by the Kafkaesque scenario he faced.  He was charged over 10 percent interest on a "debt" that was the result not of any loan taken out by Lim, but of the FDA's own mistakes in paying him for two pay periods after he was terminated, and its policy of continuing to add such significant interest charges

even after he had substantially repaid the money. Although the Government may charge interest on a debt, *see* 31 U.S.C. § 3717(a)(1) (2018), at the hearing on the Motions, HHS could not explain how it came to charge Lim interest in the amount of 10.875 percent annually. But because the evidence does not support a claim of retaliation, the Court will grant summary judgment to HHS on this claim and deny summary judgment to Lim on this issue.

### D.    Bonus Recoupment

Lim also alleges that the FDA retaliated against him by twice seeking to recoup bonus payments allegedly paid under the Incentive Agreement. Where such an action affected Lim's overall compensation for his work at the FDA, the recoupment of bonus payments constituted a materially adverse action. *Cf. Burlington Northern*, 548 U.S. at 72-73. Here, there is sufficient evidence for a reasonable jury to find that the FDA did, in fact, seek to recoup bonus payments from him on two separate occasions, once on or about August 25, 2009 when the FDA billed Lim for what it referred to as the "2008 Bonus" ("the First Bonus Recoupment"), and once more on May 7, 2010 when it billed Lim a second time in the same amount, for what the FDA referred to as the "2009 Bonus" ("the Second Bonus Recoupment"). Thus, the element of a materially adverse action has been satisfied.

Likewise, within the context of a *prima facie* case, there is evidence that the bonus recoupments were causally linked with Lim's protected activity. Courts have held that at such a stage, an adverse action's temporal proximity to protected activity can satisfy the causation requirement. *See, e.g., Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017). Here, an email chain beginning on July 21, 2009 reveals that the recoupment efforts began no later than that date, just over one month after Lim initiated his EEO activity in June 2009. Notably, the email chain included Holden and Kelly Wilkicki, the FDA Commissioner's Fellowship Program

Coordinator, both of whom were present at the June 5, 2009 meeting at which Lim was fired and wrote on the termination memorandum that he intended to file a discrimination lawsuit against the FDA. Where two of the FDA officials who made or participated in the decision relating to the bonus recoupment were aware of Lim's protected activity, the causation element of the *prima facie* case is satisfied. Consequently, with respect to the FDA's recoupment efforts, Lim has stated a *prima facie* case of retaliation.

Indeed, HHS does not contest Lim's claim on this front. Instead, it claims that the FDA had a legitimate, non-retaliatory reason for recouping the incentive payment. As to First Bonus Recoupment, it claims that the FDA properly sought to collect the bonus payment because Lim "actually owed" the FDA that debt, as he was terminated for cause and thus did not complete the two-year term as a Fellow. Mot. Summ. J. at 12. As to the Second Bonus Recoupment, it claims that the imposition of a second debt for failure to repay the bonus was merely a "clerical error" that led it to "duplicate[] the debt for the prorated portion of Lim's incentive bonus." *Id.* at 13 n.4.

### 1.    First Bonus Recoupment

HHS has adduced substantial evidence that Lim owed the FDA the amount that it sought to recover through the First Bonus Recoupment. Lim admitted during his deposition that he actually received a $7,500 incentive bonus. The Incentive Agreement providing for the $7,500 bonus, signed by Lim, provides that if the bonus recipient is "separated for cause," the recipient will be entitled only to a prorated portion of the $7,500 based on the number of full months of employment completed; the remainder will be a debt owed to the United States. J.R. 80. The personnel records reflect that Lim worked for only seven months, meaning that the FDA was entitled to recoup the bulk of the $7,500. On August 25, 2009, the FDA sent Lim a letter seeking recoupment of $5,208.90.

Lim challenges whether he owed this amount on two grounds. First, he claims that the Incentive Agreement is "void on fraud" because the FDA did not provide him with employment on the terms they originally represented. Opp'n Mot. Summ. J. at 11-13, ECF No. 107. The Incentive Agreement, however, contains no guarantees regarding the bonus recipient's terms and conditions of employment: the only commitment that the FDA undertakes under the Incentive Agreement is to pay the recipient $7,500, which it did. Second, Lim argues that he was not "separated for cause" within the meaning of the Incentive Agreement and so was not required to repay any of the bonus. J.R. 80. Specifically, Lim relies on the DLLR's determination that Lim was not discharged for "gross misconduct or misconduct connected with the work," J.R. 92, and further argues that based on the DLLR decision HHS is collaterally estopped from arguing that he was terminated for cause under the Incentive Agreement.

Lim is correct that a state agency decision can have collateral estoppel effect in a subsequent federal proceeding if the state agency was "acting in a judicial capacity" and resolved "disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986). However, this general rule of preclusion does not extend to subsequent federal proceedings brought under Title VII. *Id.* at 796 ("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *see Rao v. Cty. of Fairfax*, 108 F.3d 42, 45 (4th Cir. 1997) ("Following *Elliott*, circuit courts have uniformly held that unreviewed administrative agency findings can never be afforded preclusive effect in a subsequent Title VII action." (citations omitted)). Consequently, even if collateral estoppel would otherwise apply, Lim cannot argue in this case that HHS is precluded from claiming that he was terminated for cause. Further, collateral estoppel would not apply because the issue of fact before the DLLR, whether Lim was discharged for "gross

misconduct or misconduct connected with the work" under the Maryland law governing unemployment benefits, J.R. 92, is different from the issue whether he was "separated for cause" within the meaning of the Incentive Agreement, J.R. 80.

Thus, HHS has adequately stated a legitimate, non-retaliatory reason for the FDA's effort to recoup the 2008 bonus. The burden therefore shifts back to Lim to show that this reason was mere pretext. *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 721 (4th Cir. 2013). In showing that a defendant's proffered reason is pretextual, comparator evidence is "particularly probative." *Id.* at 719. In *McDonnell Douglas* itself, "the Court explained that 'especially relevant' to a showing of pretext would be evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804). To this end, Lim has testified that Dr. Blaise Peterson, another FDA Commissioner's Fellow, abruptly resigned about two months before Lim's employment was terminated but was not required to return a prorated portion of his bonus. Because, under the terms of the Incentive Agreement, Fellows who voluntarily resign are also required to repay a prorated share of their bonus, Lim argues that where he and Peterson are identically situated except for Lim's protected activity, the fact that the FDA declined to recoup Peterson's bonus payment reveals that the FDA did not always seek recoupment even when it was entitled to do so under the Incentive Agreement, such that the First Bonus Recoupment constituted unlawful retaliation. HHS provides no response to Lim's claim on this front and acknowledged at the hearing on the Motion that there is no evidence in the record that explains why Peterson was treated differently. Where Lim has offered uncontested circumstantial evidence that the FDA's reason for recouping his bonus was pretextual, "the case must be decided by a trier of fact and cannot be resolved on summary judgment." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) (citing

*EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001)). The Court will therefore deny summary judgment to HHS on Lim's claim that the FDA retaliated against him by pursuing the First Bonus Recoupment. However, as a reasonable jury could still find that the recoupment was not pretextual, the Court will also deny summary judgment to Lim on this claim.

### 2. Second Bonus Recoupment

HHS has acknowledged that the Second Bonus Recoupment, through which the FDA recorded a second debt against Lim in the same amount as the First Bonus Recoupment, was improper. Indeed, there is no evidence that Lim was paid a second bonus under the Incentive Agreement, so there is no justification for the Second Bonus Recoupment. HHS has not provided evidence of a legitimate, non-retaliatory reason for that improper debt collection effort, which resulted in Lim paying several thousand dollars. By way of explanation, HHS merely states in a letter to Lim and in its brief on its Motion for Summary Judgment, without any citation to the record, that the FDA "discovered that it duplicated the debt for the prorated portion of Dr. Lim's incentive bonus" and that "Dr. Lim has adduced, and the Agency has discovered, no evidence to suggest that this inadvertent duplication was the result of retaliation or anything other than a clerical error." Mot. Summ. J. at 13 n.4. HHS gets the burden at this stage of the *McDonnell Douglas* framework exactly backward: once the plaintiff has established a *prima facie* case of retaliation, as Lim has here, the burden shifts to the defendant to "produce evidence that it acted for a legitimate, non-retaliatory reason." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) ("When an employee has established a prima facie case, the burden shifts to the employer to rebut th[is] presumption of discrimination." (citation omitted)). But HHS has provided no evidence whatsoever to support counsel's conclusory statement that the imposition of a second debt was a clerical error and not something more nefarious. Significantly, the record

includes April 2011 emails showing that Holden was aware that Lim had paid back the First Bonus Recoupment but was being charged the Second Bonus Recoupment, yet she apparently took no action to rectify this error. *See* J.R. 140, 239. Where Holden was aware of Lim's protected activity, and where HHS has proffered no evidence of a legitimate, non-retaliatory reason for the Second Bonus Recoupment, the Court must deny HHS's Motion as to Lim's retaliation claim on this issue. *See id.* At the same time, where "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action," *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (citation omitted), and these records are subject to more than one interpretation, the Court will also deny Lim's Cross Motion on this claim.

### E.      Referral to Debt Collectors

Lim also claims that the referrals of his debts from HHS to Treasury and the IRS, which in turn used private contractors to seek to collect the debts, were additional acts of retaliation for his protected activity. However, even assuming that Lim has provided sufficient evidence to establish a *prima facie* case of retaliation based on these referrals, HHS has provided evidence of a legitimate, non-retaliatory reason for these referrals. William Darracott, the Chief of the Debt Servicing Section within HHS and the official who forwarded Lim's debts from HHS to Treasury for collection, has stated in an affidavit that if debts referred to his office, like those owed by Lim, "remain delinquent for more than 180 days, they are required to be forwarded to Treasury for collection action." J.R. 246. Evidence that an adverse action was in accordance with an organization's non-retaliatory policies is sufficient to demonstrate a legitimate, non-retaliatory reason, *Barnette v. Chertoff*, 453 F.3d 513, 516 (D.C. Cir. 2006), so the burden shifts back to Lim to show that this reason was pretextual. Lim fails to do so: none of his arguments about pretext relate to Darracott and the referral of Lim's debts for collection. The Court will therefore grant

summary judgment to HHS and deny summary judgment to Lim on Lim's claim of retaliation based on the referral of his debts for collection.

## III.    Discovery

As discussed above, the Court will deny summary judgment on the issues of retaliation because there are genuine issues of material fact on whether (1) FDA falsely told DLLR that Lim had resigned in order to cause him to lose unemployment benefits; (2) FDA treated Lim less favorably than a comparator, Peterson, on the issue of whether FDA would seek to recoup the incentive payment upon the Fellow's early departure, such that the pursuit of the First Bonus Recoupment against Lim was a form of retaliation; and (3) the Second Bonus Recoupment, which HHS now concedes was entirely unjustified, was a form of retaliation.    On these issues, HHS's position appears to be that (1) although there was clear internal documentation that Lim was terminated, including the June 5, 2009 termination memorandum that he refused to sign, either Lim or an FDA Human Resources official mistakenly told DLLR, or DLLR mistakenly concluded, that Lim had voluntarily resigned; (2) where only two FDA Fellows left the program early and were subject to a bonus recoupment, the decision to waive the recoupment as to Peterson and to press for the recoupment as to Lim was entirely unrelated to Lim's protected activity; and (3) the imposition of the entirely unjustified Second Bonus Recoupment was a pure clerical error, even though Holden was made aware of it in 2011, and her failure to take action then to rescind it, such that FDA continued to pursue Lim for the debt with compounding interest for another nine years, had nothing to do with retaliation.  Any one of these decisions and outright errors arguably could be chalked up to an honest mistake.  But where these actions all happened together after Lim engaged in protected activity, and they were all significantly detrimental to Lim, collectively they could support an inference of retaliation that precludes summary judgment at this time.

Nevertheless, Lim still bears the substantial burden of demonstrating that retaliation was a but-for cause of these actions, *Foster*, 787 F.3d at 252, and the evidence available to him remains limited. Consideration of these Motions has revealed that although discovery has closed, it did not provide a complete record on the issues that remain in dispute, likely because Lim was self-represented. For example, little to no discovery was taken relating to Peterson, in part because, as Lim reported at the hearing on the Motion, Peterson declined to provide an affidavit, and neither party issued a subpoena to him. Likewise, the Second Bonus Recoupment was not even identified as an issue until the briefing on the Motions. Accordingly, the Court will re-open discovery for the limited purpose of completing the record on the three issues identified above. *See Ardrey v. United Postal Serv.*, 798 F.2d 679, 682 (4th Cir. 1986) ("[A] district court has wide latitude in controlling discovery."). No discovery will be permitted on the discrimination or retaliation claims already dismissed. Where the litigation of this matter has extended for approximately three years and the issues have now been narrowed and focused, the Court will also require the parties to participate in a mediation session before discovery reopens.

### CONCLUSION

For the foregoing reasons, HHS's Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART, and Lim's Cross Motion for Summary Judgment will be DENIED. A separate Order shall issue.


Date: February 28, 2020

THEODORE D. CHUANG
United States District Judge